U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 1 6 2019

CLERK, U.S. DISTRICT COURT
By_____
         Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ANDRE D. KIMBLE,                §
                                §
            Petitioner,         §
                                §
v.                              §    No. 4:18-CV-661-A
                                §
LORIE DAVIS, Director,          §
Texas Department of Criminal    §
Justice, Correctional           §
Institutions Division,          §
                                §
            Respondent.         §

### MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to
28 U.S.C. § 2254 filed by petitioner, Andre D. Kimble, a state
prisoner confined in the Correctional Institutions Division of
the Texas Department of Criminal Justice, against Lorie Davis,
director of that division, respondent. After having considered
the pleadings, state-court records, and relief sought by
petitioner, the court has concluded that the petition should be
denied.

### I. FACTUAL AND PROCEDURAL HISTORY

On October 7, 2015, a jury in Tarrant County, Texas, Case
No. 1132560R, found petitioner guilty of assault of a family or
household member with a previous conviction and assessed his
punishment at 15 years' confinement and a $4000 fine. (Clerk's R.
104, doc. 15-10.) Petitioner's conviction was affirmed on appeal

and the Texas Court of Criminal Appeals refused his petition for discretionary review. (Docket Sheet 1-2, doc. 15-2.) Petitioner also sought post-conviction state habeas-corpus relief by challenging his conviction in two state habeas applications. The first application was dismissed by the Texas Court of Criminal Appeals because the judgment had not yet become final. The second application was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. (SHR[1] 2-18 & Action Taken, docs. 15-21 & 15-19, respectively.) This federal habeas petition followed.

At trial, Patricia Dawn Vender testified that she and petitioner were in a romantic relationship and that petitioner was living in her home. (Reporter's R., vol. 3, 22-24, doc. 15-7.) Petitioner was suspicious of her and would not allow her to go out of the house without him. (Id. at 25.) Sometime in the morning or early afternoon on December 18, 2014, she went outside to get firewood near the "mother-in-law" house in the backyard, which they used to heat their room. (Id.) Petitioner thought he heard her talking to someone and went outside, confronted her, and accused her of lying and "messing around with" the man staying in the "mother-in-law" house. (Id. at 26.) She then testified:

---

[1]All references to petitioner's state habeas application and state habeas proceedings refer to petitioner's second state habeas application in WR-84,499-02 and the documentary record of those proceedings.

He grabbed me by my hair, grabbed me by my throat, as always. Pulling me, telling me, you know, basically, that he was going to kill me, that I never do what I say I'm going to do, and who am I out there seeing, am I playing games.

. . .

He got me into the house. I had to calm him down. And I always had to talk him out of his anger and I had to make him think that he was the king, you know. That he -- excuse me -- that I'm nothing. That I always had to make it clear to him that I -- that it was my fault, that I was the one wrong, to make him feel good about himself. I had to lie to him for me to be able to get out of the house to be safe.

. . .

It was always sex after we fought. So that it would be a reassurance to him that I was going to stay or that I wasn't going to tell on him for him using me.

I -- after we started -- after I got him calmed down, I told him that I was going to go down to eat -- I was going to go down to the -- the end of Sargent Street at the smoke shop and I was going to talk to E. about working.

. . .

(Id. at 28 -30.)

After Vender left, she went to a neighbor's house and the neighbor called 911. (Id. at 30-32.) Vender testified that petitioner's abuse happened often and that when petitioner grabbed her by the face and hair, she felt pain and that when he choked her or grabbed her by the face, he always used his knuckles, not his fingers or fingernails, so "it wouldn't leave marks." (Id. at 30-31, 37, 45.) She admitted that she had prior

burglary and theft charges, an outstanding warrant for her arrest in the State of Kansas, and a drug addiction at the time of the incident. (Id. at 34-35.) She also testified that due to her son's murder and her husband's illness, and "past traumas, [she has] a lot of memory issues, a lot of disabilities." (Id. at 38.)

In addition to Vender's testimony, the state introduced pictures of her injuries, the 911 tape, and the testimony of the responding officer. (Id. at 17, 32-33; State's Exs. 2-4, doc. 15-9.) The officer testified that he met Vender a block from her house at the smoke shop and that she was scared, crying, and nervous to go back home. (Reporter's R., vol. 3, 50, 15-7.) He testified that she had bruises all over her body—some looked new like they occurred from that day, some looked like they might have been a day old, and some looked like they could be a week old. (Id. at 51.) She also had "finger marks on her arm" and burn marks on her hand. (Id.)

After being found guilty, petitioner pleaded true to the repeat-offender notice in the indictment and stipulated to a laundry list of prior offenses. (Id. at 77-78, 82-86; State's Exs. 1, 7, 8, doc. 15-9.)

## II. ISSUES

By way of this petition, petitioner raises claims falling within the following general categories:

(1)  ineffective assistance of counsel (grounds one, three, four, and six);

4

<ol start="2">
<li>(2) admissibility of statements and other evidence (ground two); and</li>
<li>(3) prosecutorial misconduct (ground five).</li>
</ol>

(Pet. 6-8, doc. 1.[2])

### III. RULE 5 STATEMENT

Respondent does not allege that the petition is barred by successiveness or the federal statute of limitations, but she does believe that two of his ineffective-assistance-of-counsel claims under category (1), above, are unexhausted and procedurally barred. (Resp't's Answer 5-7, doc. 16.)

### IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter*, 562 U.S. 86, 100-01 (2011).

The statute also requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*,

---

[2]A page was inserted into the form petition; therefore, the pagination in the ECF header is used.

210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003); *Williams v. Taylor,* 529 U.S. 362, 399 (2000).

Additionally, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief on a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* 138 S. Ct. 1188, 1191-92 (2018).

## V. DISCUSSION

### (1) Ineffective Assistance of Counsel

Under grounds one, three, four, and six, petitioner asserts that his trial counsel was ineffective by—

> (a) advising him not to take a 2-year plea offer because counsel could get it reduced to a misdemeanor;

6

(b)  failing to investigate or properly
         investigate Vender's mental illness and drug
         use;

    (c)  failing to object to the state's violation of
         a motion in limine; and

    (d)  failing to "acknowledge or bring up to the
         attention of the jury or the courts" the
         finding of the court-appointed investigator
         that a witness, Vender, gave a different
         account of the events.

(Pet. 1-8, doc. 1.)

Respondent asserts that claims (a) and (b) are unexhausted

and procedurally barred from the court's review. (Resp't's Answer

5-7, doc. 16.) Section 2254(b)(1)(A) provides that habeas relief

shall not be granted unless the petitioner has exhausted the

remedies available to him in the state courts. In this context,

the exhaustion requirement is satisfied when the federal habeas

claims have been fairly presented to the highest court of the

state on direct appeal or in state post-conviction proceedings.

*See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West 2015); *O'Sullivan v.*

*Boerckel,* 526 U.S. 838, 842-48 (1999); *Fisher v. Texas,* 169 F.3d

295, 301 (5th Cir. 1999). The exhaustion requirement is "not

satisfied if the petitioner presents new legal theories or

factual claims in his federal habeas petition" for the first

time. *Anderson v. Johnson,* 338 F.3d 381, 386 (5th Cir. 2003).

Having reviewed the state-court records, the court agrees

that claims (a) and (b) do not sufficiently correspond with the

two ineffective-assistance claims petitioner raised in his state

habeas application. Thus, the claims raised for the first time in this federal petition are unexhausted for purposes § 2254(b)(1)(A).

"A procedural default . . . occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir. 1997) (citing *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991)). If petitioner presented his unexhausted claims at this time to the Texas Court of Criminal Appeals in a subsequent state habeas application, the court would find the claims to be procedurally barred under the Texas abuse-of-the-writ doctrine. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 § 4; *Ex parte Whiteside,* 12 S.W.3d 819, 821 (Tex. Crim. App. 2000). This doctrine is an adequate and independent state ground for imposing a procedural bar on federal habeas review. *See Hughes v. Quarterman,* 530 F.3d 336, 342 (5th Cir. 2008).

A petitioner may overcome a procedural bar by demonstrating either cause and actual prejudice for the default or a showing that he is actually innocent of the crime for which he stands convicted. *See Sawyer v. Whitley,* 505 U.S. 333, 338 (1992)*; Ylst v. Nunnemaker,* 501 U.S. 797, 801-07 (1991); *Smith v. Johnson,* 216 F.3d 521, 523-24 (5th Cir. 2000). Petitioner does not assert

actual innocence or otherwise explain his failure to raise the claims in his state habeas application.

A petitioner may also overcome a procedural bar of a substantial trial-level ineffective-assistance-of-counsel claim if, in the initial-review collateral proceeding, there was no counsel or habeas counsel was ineffective in failing to raise the claim. *See Martinez v. Ryan,* 566 U.S. 1, 17 (2012). *See also Trevino v. Thaler,* 569 U.S. 413, 417 (2013) (recognizing that the "narrow exception" created by *Martinez* applies in Texas cases). Although petitioner does not invoke *Martinez/Trevino,* he was not represented by counsel in his state habeas proceedings. Therefore, the court, sua sponte, reviews his procedurally-barred ineffective-assistance claims to determine whether one or both would support a substantial claim of ineffective assistance of trial counsel.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. In applying this test, a court must indulge a strong presumption that counsel's

9

conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of § 2254(d)(1). *See Gregory v. Thaler,* 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state courts adjudicated the ineffective-assistance claims on the merits, this court must review petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011). In such cases, the "pivotal question" for this court is not "whether defense counsel's performance fell below *Strickland's* standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter,* 562 U.S. 86, 101, 105 (2011).

Under claim (a), petitioner asserts that his trial counsel advised him to reject a 2-year plea offer because he could get the charges dropped to a misdemeanor. (Pet. 6, doc. 1.) Counsel testified in an affidavit submitted in the state habeas proceedings that he met with petitioner and discussed, among other things, plea bargaining and the fact that petitioner

"wanted to plead guilty to a misdemeanor only." (SHR 33, doc. 15-21.) Additionally, on the day trial commenced, petitioner acknowledged on the record that he refused a 6-year plea offer and, most recently, a 2-year plea offer, which he authorized counsel to "counteroffer with a misdemeanor." (Reporter's R., vol. 2, 6, doc. 15-6.) The record is devoid of any proof that counsel advised petitioner to reject either offer. An ineffective assistance claim is not substantial if it does not have any merit or is wholly without factual support. *Martinez,* 566 U.S. at 15-16.

Under claim (b), petitioner asserts that counsel was ineffective by failing to investigate or properly investigate Vender's mental illness and her drug use. (Pet. 7, doc. 1.) While it is true that an attorney must engage in a reasonable amount of pretrial investigation, the record is silent as to the nature and extent of counsel's investigation, save for the fact that counsel requested and received a court-appointed investigator to assist him in the case and that he and petitioner discussed Vender and Vender's drug use, as well as his own drug use. (SHR 33, doc. 15-21.) Petitioner presents no proof whatsoever that Vender suffers from a mental illness—allegedly bipolar/schizophrenia—or that she suffered bipolar/schizophrenia "episodes" at or near the time of the incident or petitioner's trial. He fails to show what a more thorough investigation into these matters would have revealed or

that the outcome of his trial would have been different had
evidence of Vender's mental illness or additional evidence of her
drug use been introduced. An ineffective assistance claim is not
substantial if it does not have any merit or is wholly without
factual support. *Id.*

Both claims lack any factual support. Consequently, the
claims are insufficient to overcome the procedural bar.

Under claims (c) and (d), petitioner claims counsel was
ineffective by failing to object when Vender and the arresting
officer testified regarding his "priors," in violation of the
motion in limine and to acknowledge or bring up the finding of
the court-appointed investigator that a witness, Vender, gave a
different account of the incident. (Pet. 7-8, doc. 1.) In an
affidavit submitted in the state habeas proceedings, counsel
responded to the claims as follows:

> Part I. Counsel failed to object to the alleged
> victim and the police officer referring to other or
> previous cases in violation of the Judge's order.
>
> The Judge did grant my Motion in Limine ordering
> the state to not mention prior criminal or bad conduct
> incidents by [petitioner]. Both the alleged victim, Ms.
> Vender, and the police officer did violate that order.
> I did not object to those references to prior incidents
> of [petitioner] so as not to draw the jury's attention
> to the statements of the witnesses. On p. 57-59 of the
> transcript I asked the judge for a mistrial based on
> the police officer and Ms. Vender's violation of the
> Judge's order. The Judge denied my request for a
> mistrial. On p. 63 of the transcript I requested an
> extraneous offenses instruction about the statements in
> question be included in the Court's Charge. The Judge
> granted that request. On p. 64 I renewed my request for

a mistrial on the same grounds. That was denied. On p.
65 the Judge, just before reading the Court's Charge,
instructed the jury to disregard any alleged previous
assaults that had happened with this particular alleged
injured party in days prior to the incident.

Part II. Counsel failed to bring up the alleged
victim Ms. Vender's original statement and her trial
testimony.

I did bring up in detail on cross-examination of
Ms. Vender that [petitioner] did have very long
fingernails at the time of trial and at the time of the
incident. I questioned her on how there were no scratch
marks on her neck from [petitioner]'s very long
fingernails if he was to supposed to have choked her.
She explained that he strangled her in such a way as to
not leave marks from his fingernails. There were
pictures of bruising to other parts of Ms. Vender's
body that were entered into evidence. The bruising is
extensive and clear in the photos. The indictment
charged [petitioner] with assault bodily injury by
hitting Ms. Vender with his hand, twisting her arm and
grabbing her hair, face or ribs with his hand. As to
the rest of Ms. Vender's testimony, it was consistent
with her statement to the police officer at the time of
the incident, contrary to [petitioner]'s allegations.

(SHR 32-33, doc. 15-21.)

Based on counsel's affidavit, the documentary record, and
his own recollection of the trial proceedings, the state habeas
judge adopted the following findings of fact:

6. [Petitioner]'s trial counsel requested and was
granted a[n] order in limine that the State's witnesses
would not testify about [petitioner]'s prior bad acts
or criminal history.

7. [Petitioner]'s trial counsel did not object before
the jury to two instances in which State's witnesses
alluded to [petitioner]'s criminal history for the
sound tactical reason that he did not wish to draw the
jury's attention to the references.

8. Counsel, however, twice moved for a mistrial outside

the jury's presence on the grounds that the witnesses' remarks had prejudiced the jury. Both motions were denied.

9. [Petitioner]'s trial counsel cross-examined the victim regarding her injuries, but the witness was able to explain the lack of certain injuries (scratch marks) and her testimony was consistent with the physical evidence and the statement she gave to the police immediately after the assault.

. . .

13. [Petitioner] has failed to prove, by a preponderance of the evidence, that his trial counsel's performance was outside the wide range of professional competent assistance.

14. [Petitioner] has failed to prove, by a preponderance of the evidence, that but for counsel's alleged errors, the outcome of the proceeding would have been different.

(Id. at 49.)

Based on those findings, and applying the *Strickland* standard and relevant state law, the court entered the following legal conclusions:

10. Trial counsel is not obligated to request relief to which he is not entitled, and does not render ineffective assistance in failing to object to non-reversible error.

11. Counsel does not render ineffective assistance in choosing not to object to testimony in order not to emphasize the evidence with the jury by first objecting and then having the judge instruct the jury to disregard the remark.

12. [Petitioner] has failed to prove, by a preponderance of the evidence, either prong of the test for ineffective assistance of counsel; therefore he has failed to prove a basis for relief on the ground of ineffective assistance of counsel.

(Id. at 52-53 (citations omitted).)

Petitioner fails to rebut the presumption that the state court's factual findings are correct. Thus, deferring to those findings, the state court's application of *Strickland* is not objectively unreasonable. Strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for post-conviction relief. *See Strickland,* 460 U.S. 689. Furthermore, counsel did not believe that Vender's trial testimony was inconsistent with her prior statement. Counsel is not required to make frivolous objections. *See Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002).

### 2. Admissibility of Statements and Other Evidence

Under ground two, petitioner complains that Vender was never questioned about her mental illness, which, in combination with her drug use, makes it hard for her to remember. (Pet. 6, doc. 1; SHR 7, doc. 15-21.) In his affidavit, counsel responded to this claim as follows:

> [Petitioner] alleges that the Court neglected that Patricia Vender, the alleged victim, had a mental illness and it played a major role in her testimony. I crossed examined Ms. Vender thoroughly on her use of methamphetamines and her memory. I repeatedly questioned her on her memory and her loss of it or lack thereof. She did admit to using methamphetamines on a daily basis around the time of the alleged offense. She testified that she was not high at the time and she remembers the incident. She did testify that she was on disability because of her husband's death. She also said she had a child die.

(SHR 32, doc. 15-21.)

Based on counsel's affidavit, the documentary record, and his own recollection of the trial proceedings, the state habeas judge found that counsel cross-examined Vender about her use of methamphetamine; how it may have affected her memory; and how it may have affected her perception of events. Thus, the court concluded that the jury was thus made aware of issues surrounding Vender's credibility. (Id. at 49.)

Petitioner fails to rebut the presumption that the state court's factual findings are correct. Thus, deferring to those findings, the state court's application of *Strickland* is not objectively unreasonable. Petitioner presents no proof that Vender suffered from a mental illness affecting her ability to recollect the events or that her testimony was not credible based on a mental illness. Absent evidence in the recrod, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsubstantiated by anything else contained in the record, to be of probative evidentiary value. *See Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983).

### 3. Prosecutorial Misconduct

Finally, under ground five, petitioner claims that the prosecutor failed to disclose Vender's extensive criminal history and the "nature of deals" between the state and Vender in exchange for her testimony. (Pet. 8, doc. 1.) According to

petitioner, the state "no-billed" Vender for a burglary-of-a-habitation case in exchange for her testimony against him. (Id.) The prosecutor submitted an affidavit in the state habeas proceedings responding to the claim as follows:

### A. Disclosure of Criminal History of Patricia Vender

The State specifically denies the allegation that it failed to disclose the criminal history of Patricia Vendor [sic]. On October 2, 2015, the Honorable Robb Catalano, Presiding Judge of Criminal District Court Number Three, Tarrant County, Texas, ordered the undersigned, ADA Theresa Austin to disclose said criminal history. The court's order was noted by an entry on the court's jacket, Record of Criminal Actions. I hereby state under oath, that the State complied with the Court's order and the criminal history of Patricia Vender was disclosed to Counsel for [petitioner], Patrick Curran.

Moreover, the trial court record reflects a number of instances where the criminal history of Patricia Vender was discussed during testimony. During direct examination by the State, the undersigned, ADA Theresa Austin questioned Patricia Vender about her criminal history.

Counsel for the defense, Patrick Curran, also cross[-]examined the victim, Patricia Vender about her criminal history.

The record clearly reflects that the State of Texas disclosed the Criminal History of Patricia Vender to counsel for the defense, Mr. Patrick Curran.

### B. "Nature of Deals" between the State and Witness

The State specifically denies the allegation that there were any "deals" between the State and witness, Patricia Vendor [sic].

On February 23, 2013, the State filed a criminal case captioned: The State of Texas v. Patricia D. Vender, Cause Number 1407583. The case was assigned to

Andrea L. Townsend, who at the time was an Assistant
Criminal District Attorney assigned to the Criminal
District Court Number Three of Tarrant County, Texas.
Ms. Townsend is no longer employed with the Criminal
District Attorney's Office. The case was presented to a
Grand Jury on or about April 20, 2015[,] and the Grand
Jury returned a No-Bill.

The undersigned ADA, Theresa Austin has reviewed
the District Attorney's file and state[s] under oath
that there is no evidence that any deals were made
between the State and witness, Patricia Vender. I
further state, under oath, that I made no deals with
Patricia Vender in exchange for her testimony in the
trial of [petitioner].

(Id. at 46-47 (record citations omitted).)

Based on the submitted affidavit, the state habeas court

entered the following factual findings:

10. State'[s] counsel provided the victim's criminal
history to the defense well before trial, and both the
prosecution and defense referred to the victim's
criminal history during trial.

11. The State did not have a deal with the victim that
it would dismiss a pending charge against her in an
unrelated case in exchange for her testimony in
[petitioner]'s case.

12. The State presented the case against the victim to
the grand jury, which no billed it, six months before
[petitioner]'s trial.

(Id. at 50.)

Based on those findings, the court concluded that petitioner

had failed to prove either of his assertions. (Id. at 53.)

Petitioner fails to rebut the presumption that the state court's

factual findings are correct or demonstrate that the court's

factual determination is unreasonable in light of the evidence

presented in the state-court proceedings. The state habeas judge clearly found the prosecutor's affidavit credible. Credibility determinations by a state court, as well as its factual findings, are presumed correct and afforded deference, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Quarterman,* 456 F.3d 537, 2006 WL 1991686, at *2 (5th Cir. 2006); Galvan v. Cockrell, 293 F.3d 760, 764 (5th Cir. 2002).

In conclusion, petitioner has failed to demonstrate that the state courts' application of federal law, as determined by the United States Supreme Court, was objectively unreasonable or that the state courts' factual determinations regarding his claims were unreasonable in light of the evidence before the state courts.

For the reasons discussed herein,

The court ORDERS that the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied.

SIGNED September __16__, 2019.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE

19